IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

**RICKIE L. MYRICK,**       }
                            }
    **Plaintiff,**      }
                            }
v.                          }     Case. No.: 3:07-CV-1610 -JHH
                            }
**MICHAEL J. ASTRUE,**      }
**Commissioner of Social Security,** }
                            }
    **Defendant.**      }

### MEMORANDUM OPINION

Plaintiff, Rickie L. Myrick, brings this action pursuant to Section 205(g) of the Social Security Act ("the Act") seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title XVI.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3).  For the reasons outlined below, the court finds that the decision of the Commissioner is due to be affirmed because it is supported by substantial evidence and proper legal standards were applied.

**I.**      **Proceedings Below**

Plaintiff filed his application for DIB on August 19, 2005, alleging a disability onset date of January 1, 2004, (R. 53-54), which was later amended to April 15, 2004, (R. 277).  Plaintiff had acquired sufficient quarters of coverage to remain insured through December 31, 2006.  (R. 12).

On October 14, 2005, Plaintiff's application was denied initially.  (R. 26-27).  At Plaintiff's request, an administrative hearing was conducted before an Administrative Law Judge ("ALJ") on December 14, 2006. (R. 274-307).  Both Plaintiff and Vocational Expert ("VE") Karen Vessell testified at the hearing.  (R. 278-307).

In the February 16, 2007 decision, the ALJ determined that Plaintiff was not eligible for DIB because he was not under a "disability," as defined by the Act, at any time through the date of decision. (R. 12-19). After the Appeals Council denied Plaintiff's request for review on July 19, 2007, (R. 5-7), that decision became the final decision of the Commissioner, and therefore a proper subject of this court's appellate review.

At the time of the hearing, Plaintiff was forty-seven years old, a "younger" individual under the statutory framework, with a high school education. (R. 52, 90, 281). He has past relevant work experience as a truck driver (medium exertional level, semi-skilled), material handler (heavy exertional level, semi-skilled), and livestock rancher (heavy exertional level, skilled). (R. 298). According to Plaintiff, he has been unable to engage in substantial gainful activity since April 15, 2004, as amended, (R. 277), when he became unable to work due to degenerative joint disease of his left knee, diabetes, hypertension, insomnia, and wrist and shoulder pain. (R. 84).

At the December 2006 administrative hearing, Plaintiff reported pain originating from his knees, arms, wrists, and shoulders. (R. 283). He describes it as more painful than a toothache. (R. 283). He takes Lorcet for pain, and he reports that the medicine "sometimes" works to relieve that pain. (R. 284).

Plaintiff also told the ALJ that he still raises cattle on his nine-acre farm, but he stated that he does so less frequently, with the help of friends, and without making a taxable profit. (R. 93, 299). Plaintiff described his daily care of the animals as follows:

> A. I get up probably around 6:30, 7:00. I go in, eat breakfast. I come back. I'll sit down and watch TV until along about 10:30 or 11:00, then I go outside and sit around out there. I've got some animals, and I feed and take care of those. Just come back in the house and sit around and watch TV the rest of the day.

        Q.        Well, how do you feed your animals? Do you have to pick up any bags?

        A.        No, sir, I've got feed -- little feed buckets.

        Q.        Okay, how much do the feed buckets weigh?

        A.        Fifteen, twenty pounds, something like that.

        Q.        Are you able, are you able to pick those up?

        A.        Yes, sir.

        Q.        You do that all day? Feed the animals?

        A.        No, sir. No, sir.

        Q.        How long do you do that?

        A.        Probably around 20 minutes. It don't take very long. I've just got to feed.

(R. 281-82).

Plaintiff also stated that he performs household chores and other daily activities, sometimes with periods of rest, including laundry, vacuuming, dusting, washing dishes, making beds, taking out trash, shopping, preparing food, and driving a car. (R. 117-19, 121, 287, 299). He reported that he is able to take care of his personal grooming, (R. 118); has no difficulty loading or unloading groceries from his car, (R. 121); and can cut his grass, (R. 288).

**II.**        **ALJ Decision**

Determination of disability under the Social Security Act requires a five-step analysis. *See* 20 C.F.R. § 404.1 *et. seq.* First, the Commissioner determines whether the claimant is working. Second, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities. Third, the Commissioner determines whether claimant's impairment meets or equals an impairment listed in Appendix 1 of Part 404 of the Regulations.

Fourth, the Commissioner determines whether the claimant's residual functional capacity can meet the physical and mental demands of past work. The claimant's residual functional capacity consists of what the claimant can do despite his impairment. Finally, the Commissioner determines whether the claimant's age, education, and past work experience prevent the performance of any other work. In making a final determination, the Commissioner will use the Medical-Vocational Guidelines in Appendix 2 of Part 404 of the Regulations when all of the claimant's vocational factors and the residual functional capacity are the same as the criteria listed in the Appendix. If the Commissioner finds that the claimant is disabled or not disabled at any step in this procedure, the Commissioner will provide no further review of the claim.

The court recognizes that "the ultimate burden of proving disability is on the claimant" and that the "claimant must establish a *prima facie* case by demonstrating that he can no longer perform his former employment." *Freeman v. Schweiker*, 681 F.2d 727, 729 (11th Cir. 1982) (other citations omitted). Once a claimant shows that he can no longer perform his past employment, "the burden then shifts to the [Commissioner] to establish that the claimant can perform other substantial gainful employment." *Id.*

The ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset of disability on April 15, 2004, as amended. (R. 14, Finding No. 2). The ALJ found that, during the relevant time period, Plaintiff had the following medically determinable impairments, which he deemed to be "severe:" degenerative joint disease of the left knee, diabetes, hypertension, insomnia, and right shoulder pain. (R. 14, Finding No. 3). Nevertheless, he determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the criteria of an impairment listed at 20 C.F.R. pt. 404, subpt. P, app. 1. (R. 14, Finding No. 4).

According to the ALJ, Plaintiff's subjective complaints concerning his alleged impairments and their impact on his ability to work are not fully credible due to the degree of inconsistency with the medical evidence established in the record. (R. 15-16).

Moreover, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work, with certain limitations including only occasional use of extremities for pushing and pulling and using leg controls; frequent overhead reaching, handling, and fingering; no working around hazardous machinery or unprotected heights; and no working with ladders, ropes, or scaffolding. (R. 15, Finding No. 5).

The ALJ sought testimony from VE Karen Vessell at the administrative hearing, and he posed several hypothetical questions to her regarding different scenarios of functional capacity. (R. 296-307). With her help, the ALJ determined that Plaintiff is unable to perform any of his past relevant work, (R. 17, Finding No. 6), but he concluded that Plaintiff could perform light, unskilled work existing in significant numbers in the national economy, including occupations such as counter clerk, rental clerk, and machine tender (laminating machine). (R. 18, Finding No. 10). Accordingly, the ALJ found that Plaintiff was not under a "disability," as defined by the Act, at any time through the date of decision. (R. 19, Finding No. 11).

**III.   Plaintiff's Argument for Remand or Reversal**

Plaintiff seeks to have the ALJ's decision, which became the final decision of the Commissioner following the denial of review by the Appeals Council, reversed, or in the alternative, remanded for further consideration. (Doc. # 13, at 14). Plaintiff asserts only one reason why he believes that the ALJ's decision is not supported by substantial evidence and improper legal

standards were applied -- the ALJ failed to give proper weight to the opinion of his treating physician Dr. Timothy Ashley. (Doc. # 13, at 6).

**IV.     Standard of Review**

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405 (g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## V.     Discussion

Against that backdrop of applicable standards, the court rejects Plaintiff's arguments for remand and/or reversal. Plaintiff's only contention is that the ALJ improperly discounted the medical opinion of treating physician Dr. Ashley by failing to adopt the physical limitations he recommended for Plaintiff on two forms entitled "Medical Source Opinion (Physical)," which were completed by Dr. Ashley in June 2006 and December 2006 at the request of Plaintiff's attorney (hereinafter the "June Medical Form" and the "December Medical Form"). For the reasons outlined below, the court finds that the ALJ properly weighted the opinions offered by Dr. Ashley on the Medical Forms when the ALJ found that Plaintiff was not under a "disability" at any time prior to the decision.

The weight properly afforded to a medical opinion regarding the nature and severity of a plaintiff's impairments depends upon a number of factors, including the source's examining and treating relationship with the plaintiff, the evidence presented to support the opinion, the consistency of the opinion with the record as a whole, and the speciality of the medical source. *See* 20 C.F.R. § 416.927(d). The opinion of a physician, even a treating physician, may properly be discounted for good cause. *Crawford v. Commissioner*, 363 F.3d 1155, 1159-60 (11th Cir. 2004). Indeed, although a treating physician's opinion is typically given "substantial or considerable weight," that opinion may deserve less weight under the following circumstances: "(1) [the] treating physician's opinion was not bolstered by the evidence; (2) [the] evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2003)(affirming the ALJ's decision to give little weight to a treating physician's opinion due to several specific contradictions between the physician's

opinion and other evidence of record). Nonetheless, if the ALJ has failed to articulate "good cause" for assigning less weight to a treating physicians's opinion, reversible error has occurred. *Lewis*, 125 F.3d at 1440.

In this case, the ALJ articulated not just one, but three, legitimate reasons as good cause for discounting the opinions expressed on Dr. Ashley's Medical Forms: (1) the limitations Dr. Ashley recommended are inconsistent with his own numerous treatment records; (2) Dr. Ashley failed to indicate any clinical findings which would support those physical limitations; and (3) the limitations are inconsistent with Plaintiff's reported daily activities. (R. 16-17). As outlined below, the court finds that all three reasons are valid, bolstered by the application of proper legal standards, and supported by substantial evidence.

### A. Dr. Ashley's Limitations Are Inconsistent with His Own Treatment Records

First, the limitations expressed by Dr. Ashley in the boxes he "checked" on the Medical Forms are simply not consistent with Plaintiff's clinical presentation. Indeed, Dr. Ashley's treatment notes paint a very different picture of Plaintiff's condition than the strict limitations outlined in conclusory fashion on the Medical Forms. Both the June and December Medical Forms note that Plaintiff can lift a maximum of five pounds constantly but only two pounds frequently or occasionally, and both Forms recommend that standing and walking be limited to no more than two hours each during an eight hour workday with multiple opportunities to lie down during the day. (R. 259). The June 2006 Form opined that Plaintiff could never kneel, crawl, or crouch (R. 259), while the December 2006 Form stated that Plaintiff could occasionally kneel and crouch but never balance, crawl, or stoop. (R. 272). To put these limitations in the perspective of actual work ability, when the ALJ presented the VE with a hypothetical incorporating the manipulative limitations and

decreased lifting ability recommended on the Forms by Dr. Ashley, the VE opined that there existed no job which Plaintiff could perform. (R. 304, 305). In other words, Dr. Ashley's proposed limitations are so restrictive, that, if adopted, they would essentially preempt any work activity.

There is simply no support to be found in Dr. Ashley's treatment notes for the limitations described above. Two days prior to Plaintiff's alleged April 15, 2004 disability onset, Dr. Ashley examined Plaintiff and found his muscle tone, extremities, and gait to be normal. (R. 176). At that time, Plaintiff denied any fatigue or weakness. (R. 175). Thereafter, Dr. Ashley examined Plaintiff on many occasions during Plaintiff's period of alleged disability, consistently finding that Plaintiff had normal muscle tone, extremities, and gait without any neurological defects, (R. 158, 164, 167, 170, 173, 179); had a full and painless range of motion in all major muscle groups and joints and normal muscle strength, (R. 158, 161, 267, 269); and had no tenderness or misalignment in his joints, (R. 158, 161). Dr. Ashley also noted that Plaintiff's blood glucose readings were excellent, (R. 157, 160), and his hypertension improved, (R. 164, 267). Although Plaintiff once complained of shoulder pain during an examination, (R. 157), and twice demonstrated right leg pain on a straight leg raise test, (R. 160, 167), those isolated incidents certainly do not warrant the strict limitations outlined on the Medical Forms, especially given that the majority of Plaintiff's examinations were overwhelmingly and consistently normal.

Perhaps the most obvious inconsistency between Dr. Ashley's treatment notes and his Medical Form opinions lies with his November and December evaluations of Plaintiff. On November 3, 2006, just one month before Dr. Ashley completed his December Medical Form which repeated most of his recommended limitations from the June 2006 Form, he examined Plaintiff and noted his normal muscle tone and strength; normal joints; normal neurological signs in Plaintiff's

9

biceps, triceps, and knees; and a full and painless range of motion in all major muscle groups. (R. 264). Neither Dr. Ashley's November examination notes nor his December Medical Form offer any clue as to what led Dr. Ashley to conclude *only one month* after such a positive examination that Plaintiff was severely limited in his functional capacity. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (finding that good cause exists where a treating physician's opinion was contradicted by other notations in the physician's own treatment records). Such inconsistencies provide sufficient "good cause" for the ALJ to have discounted Dr. Ashley's opinions as to Plaintiff's physical limitations.

      **B.    Dr. Ashley Failed to Indicate Any Clinical Findings in Support of His Limitations**

The ALJ's second reason for discounting the opinions offered by Dr. Ashley on his Medical Forms is also well-founded – Dr. Ashley failed to note any clinical findings which would support his proposed limitations. (R. 259). Both the June and December Forms expressly caution: "it is important [for Dr. Ashley] to relate particular medical findings to any assessed reduction in [physical] capacity – the usefulness of this assessment depends on the extent to which [Dr. Ashley] does this." (R. 259, 272). Despite that admonition, Dr. Ashley merely "checked" the boxes corresponding with his proposed limitations without listing even one test result, diagnosis, examination finding, or other reason for his recommendations. (R. 259-60, 272-73).

In the absence of any such supporting evidence, there is no explanation for what appear to be internal inconsistencies between Dr. Ashley's recommended limitations. For example, Dr. Ashley opined on both the December and June Forms that Plaintiff should be able to lift more weight constantly (five pounds) than he can lift occasionally (two pounds). (R. 259, 272). Without any

clinical finding to explain that summary conclusion, it is difficult to reconcile why Plaintiff would be able to lift more weight for a longer period of time than he can lift less weight.

Likewise, Dr. Ashley failed to provide any explanation for a major change in his opinion regarding Plaintiff's ability to kneel, crawl, or crouch. In June 2006, Dr. Ashley opined that Plaintiff must *never* kneel, crawl, or crouch. (R. 259). But by December 2006, Dr. Ashley decided that Plaintiff could occasionally kneel and crouch, but must never balance, crawl, or stoop. (R. 272). Dr. Ashley's failure to refer to any supporting medical findings when outlining, and altering, his proposed limitations makes them seem arbitrary rather than accurate.

An examination of the record as a whole also reveals no other practitioner opinion nor diagnostic test that lends outside support to Dr. Ashley's proposed limitations. The only x-ray evidence in the record supports the ALJ's conclusion that Plaintiff is not disabled. A September 2005 x-ray of Plaintiff's left knee showed only "mild" degenerative arthritis, (R. 155), while an x-ray of Plaintiff's right shoulder taken at the same time showed degenerative changes to his AC joint, (R. 154).

Moreover, the October 2005 opinion of state agency medical consultant Dr. Alan Reynolds supports the ALJ's RFC, not Dr. Ashley's proposed restrictive limitations. The regulations make clear that an ALJ is required to consider the opinions of state agency medical consultants because they are highly qualified physicians who are experts in disability evaluation. 20 C.F.R. § 404.1527(f)(2)(I). When evaluating Plaintiff's condition, Dr. Reynolds reviewed the x-rays of Plaintiff's left knee and right shoulder, Dr. Ashley's treatment notes, and the other medical evidence in the record. (R. 250). Based upon his review, Dr. Reynolds opined that Plaintiff could lift fifty pounds occasionally and twenty-five pounds frequently; and could sit, stand, or walk for six hours

each during an eight-hour workday. (R. 250, 256). Indeed, the limitations proposed by Dr. Reynolds are even *less restrictive* than those contained in the ALJ's RFC finding, indicating that the ALJ erred in Plaintiff's favor when crafting his RFC.

For all of these reasons, this court affirms the ALJ's conclusion that the evidence contains, "no objective records to support significant limitations. As noted above, objective findings, including x-rays and examination by Dr. Ashley showed no significant limitations in his functioning." (R. 17).

### C. Dr. Ashley's Limitations Are Inconsistent with Plaintiff's Reported Daily Activities

Finally, the court notes that Plaintiff's own testimony about his daily activities provides additional support for the ALJ's decision to discount Dr. Ashley's opinions. Contrary to Dr. Ashley's opinion that Plaintiff cannot lift more than two pounds occasionally, Plaintiff himself stated that he routinely lifts twenty pound feed buckets for up to twenty minutes a day when he takes care of his livestock. (R. 282). Plaintiff also stated that he completes housework, including laundry, vacuuming, dusting, washing dishes, making beds, taking out trash, and other routine tasks including shopping, preparing food, and driving a car. (R. 117-19, 121, 287, 299). He also testified that he can handle his personal care, (R. 118); has no difficulty loading or unloading groceries from his car, (R. 121); and can cut his grass, (R. 288). Moreover, when probed by the ALJ, Plaintiff initially acknowledged that he might be able to perform certain types of jobs in the national economy, (R. 282-83), although he later amended that testimony when questioned by his attorney, (R. 296).

While it is clear in this Circuit that "participation in everyday activities of short duration" does not mean that a claimant is not disabled, *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997), such activities are relevant to the matter of Plaintiff's credibility, *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *Dyer v. Barnhart*, 395 F.3d 1206 (11th Cir. 2005) (finding that

ALJ properly considered claimant's daily activities, frequency of symptoms, medications, and found subjective complaints were inconsistent with plaintiff's medical record); *Graham v. Apfel*, 129 F.3d 1420, 1421-22 (11th Cir. 1997)(reasoning that activities such as child care, attending school, and performing household chores supported ALJ's conclusion that Plaintiff could perform light work). Thus, evidence indicating that Plaintiff is not totally incapacitated with respect to his daily functioning, especially when considered in combination with the objective medical evidence of record, supports the ALJ's decision to discount Dr. Ashley's proposed, strict limitations.

For all of the reasons articulated by the ALJ, the court finds that his decision to discount Dr. Ashley's form opinions was appropriate, guided by proper legal standards, and supported by substantial evidence.

## VI. Conclusion

Thus, the court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination. The Commissioner's final decision is due to be affirmed, and a separate order in accordance with this memorandum opinion will be entered.

**DONE** this the   7th   day of January, 2009.

_____
SENIOR UNITED STATES DISTRICT JUDGE